UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CXA-16 CORPORATION,

        Plaintiff,

v.

TELEFAR ASSOCIATES, LLC, ET. AL.,

        Defendants.

_____/

Case No. 15-14316

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER DENYING MOTION TO DISMISS [11]**

      Plaintiff filed a complaint on December 11, 2015 seeking to recover the remainder of the deficiency on a defaulted business loan based on a guaranty executed by the guarantor Defendants. Defendants filed a Motion to Dismiss on January 25, 2016 [11]. Plaintiff responded on February 18, 2016 [16] and Defendants replied on March 3, 2016 [17]. Both parties filed supplemental briefs on August 12, 2016 [24; 25]. A hearing was held before the Court on August 4, 2016, where argument was presented on this Motion. For the reasons stated below, Defendants' Motion to Dismiss [11] is **DENIED.**

1

## FACTUAL BACKGROUND

Defendant, Telefar, LLC ("Telefar"), obtained a loan from Sterling Bank and Trust, FSB ("Sterling") in March 2004. This loan was secured by real property located in Southfield, Michigan. Documents evidencing the loan and establishing the terms for its repayment were executed and delivered by Telefar and the Guarantor Defendants on March 22, 2004. The loan documents contained the following: (1) a promissory note in the principal amount of $2,650,000.00 dated March 22, 2014; (2) the mortgage; (3) an assignment of leases and rents; (4) an assignment of contracts; and (5) the Guaranty. The Guaranty was executed and delivered by the Guarantor Defendants, Gus E. Zervos, Peter E. Zervos and Michael E. Zervos.

Under the Guaranty, the Guarantor Defendants agreed to be jointly and severally liable for Telefar's payment for up to 50% of the total indebtedness due under the note. [1-6 at 71]. The Guaranty contained the following provisions:

> **The [Guarantors], hereby jointly and severally unconditionally guaranty the full and prompt payment and collection when due,** whether by acceleration of otherwise, and at all times hereafter, **of: (a) The continuous top fifty percent (50%) of the total indebtedness on the Mortgage Note executed** of even date herewith and incorporated herein by reference… **(b) The continuous top fifty percent (50%) of the total indebtedness for all extensions or renewals of said note**, and all expenses including reasonable attorney fees, incurred in the collection thereof…; **and (c) The continuous top**

2

> **fifty percent (50%) of the total indebtedness resulting from advances made on Borrowers behalf by Lender** to protect or preserve the priority and security of its first lien….
>
> …a separate action or actions for payment, damages or performance may be brought and prosecuted against the undersigned… whether or not an action is brought against Borrower or the security for Borrower's obligations.
>
> Lender may… without affecting, diminishing or releasing the liability of the undersigned...(f) resort to the undersigned (or any of them) for payment of any of the Liabilities, or any portion thereof, whether or not Lender shall have resorted to any property securing any of the Liabilities or any obligation here under….
>
> **Any amount received by Lender from whatever source and applied by it toward the payment of the Liabilities shall be applied in such order of application as Lender may from time to time elect**.
>
> No action of Lender permitted hereunder shall in any way impair or affect this Guaranty.
>
> Until all of the Liabilities shall have been paid to Lender in full, the undersigned shall have no right to subrogation, and until such time the undersigned waive… any right to participate in any security now or hereafter held by Lender.

[1-6].

Plaintiff, CXA-16 Corporation, was assigned the rights, title and interest in and to the loan and loan documents on October 16, 2014. On October 30, 2014, Plaintiff sent Defendants notice that Telefar was in default on its obligations under

the loan and demanded payment within 10 days to bring the loan current. [1-14].[1] This notice also advised Defendants that LNV had accelerated the loan and if the loan was not brought current, Plaintiff was prepared to exercise legal remedies. At this time the amount owed under the loan documents was $2,040,592.47 [1-2 at 26]. Telefar and Guarantor Defendants failed to pay the amount needed to bring the loan current.

Pursuant to their rights under the loan documents, Plaintiff foreclosed the mortgage and purchased the property for a credit bid of $1,400,000.00 at a foreclosure sale held on October 27, 2015. [1 at ¶22]. Plaintiff applied the credit bid in partial satisfaction of the amount owed under the loan. As of November 13, 2015, the deficiency balance on the loan, including reasonable attorney's fees was $748,636. [1 at ¶23]. Telefar and the Guaranty Defendants failed to pay the deficiency balance. Plaintiff then filed this suit seeking relief based on contractual claims and, in the alternative, claims based in tort.

## ANALYSIS

In the Motion to Dismiss, Defendants attack Plaintiffs' complaint on the following grounds: (1) the claim for promissory estoppel fails as a matter of fact

---

[1] Guarantor Defendants had previously received notice that Telefar was in default on its obligations to repay the loan from prior assignee LVN on June 23, 2014. [1-11]. In this notice they demanded repayment in 10 days, or the entire balance might be accelerated. Defendants made no payment.

4

and law; (2) the tort claims are barred by Michigan's contract bar doctrine; (3) the common law and statutory conversion claims fail as a matter of law; (4) the failure of Plaintiff to adequately plead implied contract claims requires dismissal; and (5) the Plaintiff is barred from seeking further recovery from the individual Defendants by the express terms of their limited guaranty.

### 1. PROMISSORY ESTOPPEL CLAIM AND TORT CLAIMS

In the Motion to Dismiss, Defendants argue that Plaintiff's Promissory Estoppel claim and all tort claims fail as a matter of law and fact, because, in this case, there are express written contracts that govern the parties' transactions. Because Plaintiff is suing in reliance upon these express contract terms, Defendants argue that a claim in equity may not be claimed alongside these contract-based claims.

This argument is without merit. While it is true that Plaintiff cannot recover on both theories for the same alleged harm, Plaintiff is merely exercising its right under Fed. R. Civ. P. 8(d)(2)&(3) to plead alternative theories of recovery:

> (2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

5

Defendants have not admitted to the execution, validity, or terms of the Guaranty upon which Plaintiff's complaint is based. [10 at ¶9(e); ¶26-33]. Plaintiff may plead both contract-based claims and a promissory estoppel claim in the alternative since there are questions of fact regarding the contract at issue and its terms and coverage. *Wake Plumbing & Piping, Inc. v. McShane Mech. Contracting, Inc.*, No. 12-12734, 2012 WL 6591664, at *2 (E.D. Mich. Dec. 18, 2012).

## 2. CONVERSION CLAIMS

Plaintiff brings common law and statutory claims of conversion with respect to the alleged failure of Defendants to deliver rents they have received since the foreclosure, in violation of the assignment of rents. Defendants claim that Plaintiff's common law and statutory claims should be dismissed for failure to state a claim because Plaintiff has failed to comply with statutory prerequisites to enforce its assignment of rents against Defendants under Michigan law. Additionally, Defendants assert that Plaintiff fails to state a claim for statutory or common law conversion under Michigan law.

Plaintiff has met the statutory requirements to enforce its assignment of rents against Defendants. In Michigan, assignment of rents is governed by M.C.L.A. §§ 554.231 and 554.232:

> …in or in connection with any mortgage on commercial or industrial property…it shall be lawful to assign the rents, or any portion thereof, under any oral or written leases upon the mortgaged property to the mortgagee, as security in addition to the property described in such mortgage. **Such assignment of rents shall be binding upon such assignor only in the event of default in the terms and conditions of said mortgage**, and shall operate against and be binding upon the occupiers of the premises from the date of filing by the mortgagee in the office of the register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of such notice upon the occupiers of the mortgaged premises.

MCL § 554.231 (emphasis added).

> The assignment of rents, when so made, shall be a good and valid assignment of the rents to accrue under any lease or leases in existence or coming into existence during the period the mortgage is in effect, against the mortgagor or mortgagors or those claiming under or through them from the date of the recording of such mortgage, and shall be binding upon the tenant under the lease or leases upon service of a copy of the instrument under which the assignment is made, together with notice of default as required by section 1.

MCL § 554.232.

Defendants argue that per the statutory language, rents cannot be collected unless the lender, *inter alia*, records a notice of default and serves the recorded notice and instrument, requirements they allege Plaintiff has not met. The additional requirements that Defendants assert Plaintiff has not met are only necessary if the lender is seeking to enforce an assignment of rents against the tenants of the secured property, and are not required if seeking to enforce and

7

assignment of rents against the mortgagor. *See Matter of Coventry Commons Associates*, 143 B.R. 837, 838 (E.D. Mich. 1992) (holding that "notice and recording requirements required by §§ 231 and 232 for an assignee of rents to enforce such assignment against *tenants*…such additional requirements are not required when the assignee seeks to enforce an assignment of rents against the assignor only." (emphasis added)); Therefore, Plaintiff has met the statutory requirements to seek the delivery of rents post-foreclosure under Michigan law, and thus may seek them in conversion as the rents are Plaintiff's personal property.

In Michigan, common law conversion is defined as, "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."  (Pollard v. J.P. Morgan Chase Bank, NA, 50 F. Supp. 3d 829, 834-35 (E.D. Mich. 2014), quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600 (1992). ). "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care." *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich.App. 94, 111 (1999). "[T]he defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Id* at 112.

Per Plaintiff's complaint, they allege, *inter alia*, that:

8

> 46. Pursuant to the Assignment of Rents, which CXA is entitled to enforce, Telefar is required to deliver to CXA any rents it has received on the Property after the foreclosure.
>
> 47. Any such Rents paid to Telefar were received in trust, and after the foreclosure on October 27, 2015, Defendants (the Guarantor Defendants pursuant to their Guaranty) were required to turn over all such Rents to CXA. On information and belief, in breach of the foregoing obligation, Defendants have failed to do so.
>
> 48. Defendants have wrongfully retained, used and/or realized value from Rents without permission from CXA.

[1]. These allegations clearly support that a claim of common law conversion.

Plaintiff also successfully alleges a claim for statutory conversion under MCL §600.2919a. In their complaint, Plaintiffs alleges that "Defendants wrongfully converted, received, possessed, and/or aided in the concealment of the Rents, knowing that such property was converted." Per the Michigan statute, knowingly "buying, receiving, possessing, [or] concealing" converted property constitutes conversion. [1 at ¶53]. Thus, the above claim sufficiently alleges statutory conversion.

### 3. BREACH OF IMPLIED CONTRACT CLAIMS

Defendants argue that Plaintiff has not pled sufficient facts in their two breach of implied contract claims to survive a motion to dismiss. Specifically, it is asserted that Plaintiff "has not sufficiently alleged that it directly provided a benefit to each of the defendants." Additionally, Defendants argue that because Plaintiff

9

has pled that there are express contracts governing the relationship between the parties, claims for an implied contract cannot stand since they cover the same subject matter as the express contracts. *Martin v. East Lansing School Dist.*, 193 Mich. App. 166, 177 (1992).

Under Michigan law, the elements of a claim for breach of implied contract/unjust enrichment are: "(1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain." *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991). Plaintiff's complaint contains allegations that Defendants all received a benefit from Plaintiff. For example, in ¶56, Plaintiff alleges that to "induce Sterling to extend credit and loan money to Telefar…Guarantor Defendants guarantied and agreed to pay all of Telefar's indebtedness relating to the Loan" and further states that, by their assignment, Plaintiff "is now entitled to exercise all rights [of the previous Guarantee] under the Guaranty."

As the recipient of a loan, it is clear that Defendants received a benefit. Plaintiff was assigned the rights, title and interest in the loan and documents on October 16, 2014. Per the terms of the Guaranty, Defendant Guarantors were given the Guaranty "[f]or value received, the sufficiency of which is hereby acknowledged and in consideration of any loan or other financial

accommodation…granted to [Telefar] by [Lender]…together with its successors and assigns…" [1-6 at 2]. Therefore, per the terms of the Guaranty, Defendants have received a benefit from Plaintiff, and Defendants argument for dismissal lacks merit.

Additionally, the argument that the claims for breach of an implied contract should be dismissed because they cannot lie when there is an express contract between the two parties on the same issue is without merit. As explained above, Plaintiff has pled these claims in the alternative under Fed. R. Civ. Pro. 8(d).

### 4. EXPRESS TERMS OF THE LIMITED GUARANTY

The Guarantor Defendants argue that the phrase "continuous top fifty percent" in the guaranty limits their liability to Plaintiff. According to this theory, if Plaintiff wanted to obtain recovery from the Guarantor Defendants under the Guaranty agreement it should have pursued the guarantors prior to recovering excess of the top 50% of the indebtedness from the foreclosure proceeds.

When Plaintiff served the notice of default to the Defendants on or about October 30, 2014, the total indebtedness was $2,040,592.47, and the Guarantor Defendants were liable for $1,010,296.23. The amount collected from the foreclosure sale was $1,400,000.00. Because this amount is $389,703.77 greater than the Guarantor Defendants' obligation at the time of default, they argue that

their responsibility under the Guaranty has been fulfilled and the Plaintiff is barred from seeking further recovery from them.

Plaintiff rejects this construction and insists that Guarantor Defendants remain liable under the Guaranty. It claims that when CXA purchased the property for a credit bid of $1,400,000.00 it applied that amount to the "bottom" of the debt. The resulting deficiency of $748,636 is less than the Guarantor Defendants' total obligations under the Guaranty and therefore Plaintiff is entitled to collect the entire deficiency balance against them.

In Michigan, "[a] guaranty is construed like any other contract, and the intent of the parties as discerned from the entire instrument governs its interpretation." *RBS Citizens Bank, N.A. v. Purther*, 22 F. Supp. 3d 747, 751 (E.D. Mich. 2014). While Defendants rely on a "common-sense" interpretation of the plain language of the contract terms, Plaintiff relies on case law to support the principle that "if the lender collects money through foreclosure, the lender will not be required to offset those funds against the money due from the guarantor." 11 Mich. Civ. Jur. *Guaranty* § 22 (2016). This principle was articulated in *Comerica Bank v. Cohen*, where the court held that a guarantor was not entitled to receive credit for outside payment of a debt. 291 Mich. App. 40, 805 N.W.2d 544 (2010).

The guaranty in question was similar to the case at hand and stated "the obligations of the Guarantor hereunder shall be limited to 30% of the indebtedness outstanding from time to time under the Note" *Id*. at 43. The Defendant in that case argued that because the guaranty was limited to only 30% of the debt, the defendant's obligation would be satisfied from the proceeds from a proposed foreclosure sale. *Id.* at 44. The court rejected this argument:

> [B]y the plain language of the guaranty, defendant unconditionally and absolutely agreed to pay 30 percent of the indebtedness and plaintiff was not required to foreclose on the real estate or proceed against other collateral before seeking payment from defendant.

*Id.* at 49.

The court went on to state:

> Furthermore, even if plaintiff did collect money through foreclosure, plaintiff would not be required to offset those funds against the money due from defendant unless the payment by defendant would result in recovery of more than 100 percent of the indebtedness.

*Id*. at 49.

Notably, the language in *Cohen* does not contain any word analogous to the word "top" which is found in this Guaranty. However, although *Cohen* does not contain the word "top," another Michigan case, *Sterling Bank & Trust, F.S.B. v. SC Southfield-Twelve Associates, L.L.C.*, does contain similar language. No. 322325, 2015 WL 7367997 (Mich. Ct. App. Nov. 19, 2015). The language of the guarantee

13

in *Sterling* stated that the guarantors "unconditionally guarantee[d] … the top twenty five percent (25 %) of the outstanding indebtedness." *Id.* at *4. The guarantor defendants in that case put forth the same argument presented here and claimed "the word "top" means that Canvasser promised to pay the first or initial 25% portion of SC STA's liability under the promissory note" and that any subsequent foreclosure proceeds should be deducted from this amount. *Id.* at *4.

The Michigan Court of Appeals rejected this argument and affirmed the decision of the trial court holding that "defendants' interpretation of 'top' is not supported by the precise terms of the agreement, and plaintiff was not required to foreclose on the leasehold mortgage at a particular time or apply the proceeds from the foreclosure or other funds received" in a manner that extinguished the guarantors' liability. *Id.* at *5.

While in *Sterling,* the guaranty did not contain the word "continuous," it did contain the word "outstanding" which the court found to be "significant in ascertaining [the Guarantors'] obligations under the guaranty and in construing the word 'top.'" *Id.* at *4. In analyzing the contract language, the court the interpreted "outstanding" as meaning "continuing to exist," and held that this meant that the guarantor promised to pay the "first or initial 25% of [the borrowers'] unpaid or uncollected debt when the debt was due, or at any time after it became due,

14

regardless of any other payments received by plaintiff." *Id.* at *4. Like the word "outstanding," "continuous" can also mean "continuing to exist" and the Court is not persuaded that Defendants have successfully distinguished the instant case from *Sterling* and shown that their interpretation merits a dismissal of the case.

Furthermore, Defendant's argument fails to consider another provision in the Guaranty which states "Any amount received by Lender from whatever source and applied by it toward the payment of the Liabilities shall *be applied in such order of application as Lender may from time to time elect*" (emphasis added) [1-6 at 73].[2] Reading the Guaranty as a whole, this provision supports Plaintiff's claim that it applied for foreclosure proceeds to the "bottom" of the debt leaving the "top" untouched. *See Cohen*, 291 Mich. App. at 46 ("[A] contract is to be construed as a whole... all its parts are to be harmonized so far as reasonably possible... no part is to be taken as eliminated or stricken by some other part unless such a result is fairly inescapable") (citation omitted).

---

[2] This language is also present in the *Sterling* case and contributed to the trial court's conclusion "the plain language of the guaranty … does not prescribe a particular timeframe or order for applying payments in the calculation of SC STA's outstanding debt for purposes of determining Canvasser's "top 25%" share." *Sterling*, 2015 WL 7367997, at *4 .

15

Plaintiff has presented a plausible interpretation of the Guaranty which is supported by both its express language and Michigan case law construing similar language. Accordingly, Defendants' Motion to Dismiss is denied.

**IT IS ORDERED** that Defendants' Motion to Dismiss [11] is **DENIED.**

**SO ORDERED**.

|  |  |
|---|---|
|  | s/Arthur J. Tarnow |
|  | Arthur J. Tarnow |
| Dated: September 9, 2016 | Senior United States District Judge |