UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CXA-16 CORPORATION,

               Plaintiff,

v.

TELEFAR ASSOCIATES LLC, ET. AL.,

               Defendants.

_____/

Case No. 15-14316

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER GRANTING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT
[22]**

Plaintiff filed a Motion for Partial Summary Judgment on Counts I, II and VI of the Complaint [22] on July 18, 2016.[1] Defendants Responded on August 8, 2016 [23] and Plaintiff replied on August 25, 2016 [26]. The Court held a hearing on the Motion for Summary Judgment on November 4, 2016. From the bench, the Court ruled in favor of the Plaintiff but took the motion under advisement so that the parties could attempt to reach an agreement as to the amount of damages to be awarded. The parties have been unable to reach an agreement and therefore filed supplemental briefs on the issue of damages on March 24, 2017 [30; 31]. For the reasons stated below, Plaintiff's Partial Motion for Summary Judgment is **GRANTED** against all Defendants and judgment is entered as described below

---

[1] While this Motion for Summary Judgment only concerns claims I, II and VI, the remaining claims (Counts III, IV, V, VII, VIII and IX) are plead in the alternative so final judgment issues from this order.

against Defendants, jointly and severally, for $810,006.56. It is further ordered that Plaintiffs submit detailed evidence and documentation to support their attorney fees and costs request in a Motion for Attorney Fees and Costs to the Court no later than May 1, 2017. Defendants shall then respond by no later than May 15, 2017.

**FACTUAL BACKGROUND**

Defendant, Telefar, LLC ("Telefar"), obtained a loan from Sterling Bank and Trust, FSB ("Sterling") in March 2004. This loan was secured by real property located in Southfield, Michigan. Documents evidencing the loan and establishing the terms for its repayment were executed and delivered by Telefar and the Guarantor Defendants on March 22, 2004. The loan documents contained the following: (1) a promissory note in the principal amount of $2,650,000.00, dated March 22, 2014; (2) the mortgage; (3) an assignment of leases and rents; (4) an assignment of contracts; and (5) the Guaranty. The Guaranty was executed and delivered by the Guarantor Defendants, Gus E. Zervos, Peter E. Zervos and Michael E. Zervos.

Under the Guaranty, the Guarantor Defendants agreed to be jointly and severally liable for Telefar's payment for up to 50% of the total indebtedness due under the note. [1-6 at 71]. The Guaranty contained the following provisions:

> **The [Guarantors], hereby jointly and severally unconditionally guaranty the full and prompt payment and collection when due,** whether by acceleration of otherwise, and at all times hereafter, **of: (a) The continuous top fifty percent (50%) of the total indebtedness**

**on the Mortgage Note executed** of even date herewith and incorporated herein by reference… **(b) The continuous top fifty percent (50%) of the total indebtedness for all extensions or renewals of said note**, and all expenses including reasonable attorney fees, incurred in the collection thereof…; **and (c) The continuous top fifty percent (50%) of the total indebtedness resulting from advances made on Borrowers behalf by Lender** to protect or preserve the priority and security of its first lien….

…a separate action or actions for payment, damages or performance may be brought and prosecuted against the undersigned… whether or not an action is brought against Borrower or the security for Borrower's obligations.

Lender may… without affecting, diminishing or releasing the liability of the undersigned...(f) resort to the undersigned (or any of them) for payment of any of the Liabilities, or any portion thereof, whether or not Lender shall have resorted to any property securing any of the Liabilities or any obligation here under….

**Any amount received by Lender from whatever source and applied by it toward the payment of the Liabilities shall be applied in such order of application as Lender may from time to time elect.**

No action of Lender permitted hereunder shall in any way impair or affect this Guaranty.

Until all of the Liabilities shall have been paid to Lender in full, the undersigned shall have no right to subrogation, and until such time the undersigned waive… any right to participate in any security now or hereafter held by Lender.

[1-6].

Plaintiff, CXA-16 Corporation, was assigned the rights, title and interest in and to the loan and loan documents on October 16, 2014. On October 30, 2014, Plaintiff sent Defendants notice that Telefar was in default on its obligations under

the loan and demanded payment within 10 days to bring the loan current. [1-14].[2]

This notice also advised Defendants that LNV had accelerated the loan and, if the

loan was not brought current, Plaintiff was prepared to exercise legal remedies. At

this time the amount owed under the loan documents was $2,040,592.47 [1-2 at

26]. Telefar and Guarantor Defendants failed to pay the amount needed to bring

the loan current.

Pursuant to their rights under the loan documents, Plaintiff foreclosed the

mortgage and purchased the property for a credit bid of $1,400,000.00 at a

foreclosure sale held on October 27, 2015. [1 at ¶22]. Plaintiff applied the credit

bid in partial satisfaction of the amount owed under the loan. Telefar and the

Guaranty Defendants failed to pay the deficiency balance. Plaintiff then filed this

suit seeking relief based on contractual claims and, in the alternative, claims based

in tort.

**ANALYSIS**

In this case, it is undisputed that, between the parties, contracts existed

between them and that the loan documents set forth the terms of those contracts.

There is no challenge to the existence of these documents, their execution, or the

---

[2] Guarantor Defendants had previously received notice that Telefar was in default on its
obligations to repay the loan from prior assignee LVN on June 23, 2014. [1-11]. In this
notice they demanded repayment in 10 days, or the entire balance might be accelerated.
Defendants made no payment.

right of Plaintiff to enforce them. Further, it is undisputed that there was a breach of these contracts when Defendants failed to make payments due on the loan.

Defendant contends that Plaintiff cannot seek the deficiency payment it alleges to be entitled to because: (1) Plaintiff is estopped from claiming a higher balance owed as of the foreclosure sale date than alleged in the complaint; (2) Plaintiff has already recovered the continuous top 50% of the loan balance as set forth in the guaranty, and thus is not entitled to seek any further recovery from the individual Defendants; (3) Plaintiff is not entitled to recover post-foreclosure expenses as part of a deficiency balance; and (4) Plaintiff is not entitled to recover attorney fees where it has not presented evidence to support such fees; (5) Plaintiff is not entitled to recover redundant "other bank expenses" not provided for by the parties' agreement.

## 1. BALANCE OWED AS OF THE FORECLOSURE SALE DATE

Plaintiff alleged a deficiency balance in the complaint as being $748,636.00 [1 at ¶23], which was reiterated by Plaintiff's counsel in a letter sent on November 13, 2015 [31-1]. Defendant argues that Plaintiff is estopped from claiming a higher balance owed as of the foreclosure sale date, $825,292.54, than alleged in the complaint because this was a judicial admission. There has been no precedent or rule cited to support this statement. At the hearing for the motion for summary judgment, the discrepancy was addressed and again here Plaintiff's detailed

declaration has not been challenged factually and Defendant cannot point to any alleged error or present any evidence that the Court should not accept this amount. Therefore, the Court accepts Plaintiff's alleged balance as being $825,292.54.

## 2. EXPRESS TERMS OF THE LIMITED GUARANTY

The Guarantor Defendants argue that the phrase "continuous top fifty percent" in the guaranty limits their liability to Plaintiff. According to this theory, if Plaintiff wanted to obtain recovery from the Guarantor Defendants under the Guaranty agreement, it should have pursued the guarantors prior to recovering excess of the top 50% of the indebtedness from the foreclosure proceeds.

When Plaintiff served the notice of default to the Defendants, on or about October 30, 2014, the total indebtedness was $2,040,592.47, and the Guarantor Defendants were liable for $1,010,296.23. The amount collected from the foreclosure sale was $1,400,000.00. Because this amount is $389,703.77 greater than the Guarantor Defendants' obligation at the time of default, Defendants argue that their responsibility under the Guaranty has been fulfilled and the Plaintiff is barred from seeking further recovery from them.

Plaintiff rejects this construction and insists that Guarantor Defendants remain liable under the Guaranty. It claims that when CXA purchased the property for a credit bid of $1,400,000.00, it applied that amount to the "bottom" of the debt. The term "top" sets the level of liability at the highest 50% of the debt, after

the debt becomes due, and the term "continuous" means "on-going," *i.e.* that the Guarantors are liable for their share of the debt that remains outstanding. [24 at 3]. The resulting deficiency is less than the Guarantor Defendants' total obligations under the Guaranty, and therefore Plaintiff is entitled to collect the entire deficiency balance against them.

In Michigan, "[a] guaranty is construed like any other contract, and the intent of the parties as discerned from the entire instrument governs its interpretation." *RBS Citizens Bank, N.A. v. Purther*, 22 F. Supp. 3d 747, 751 (E.D. Mich. 2014). While Defendants rely on a "common-sense" interpretation of the plain language of the contract terms, Plaintiff relies on settled case law to support the principle that "if the lender collects money through foreclosure, the lender will not be required to offset those funds against the money due from the guarantor." 11 Mich. Civ. Jur. *Guaranty* § 22 (2016). This principle was articulated in *Comerica Bank v. Cohen*, where the court held that a guarantor was not entitled to receive credit for outside payment of a debt. 291 Mich. App. 40, 805 N.W.2d 544 (2010).

The guaranty in that matter was similar to the case at hand and stated "the obligations of the Guarantor hereunder shall be limited to 30% of the indebtedness outstanding from time to time under the Note" *Id*. at 43. The Defendant in that case argued that, because the guaranty was limited to only 30% of the debt, the

defendant's obligation would be satisfied from the proceeds from a proposed foreclosure sale. *Id.* at 44.  The court rejected this argument:

> [B]y the plain language of the guaranty, defendant unconditionally and absolutely agreed to pay 30 percent of the indebtedness and plaintiff was not required to foreclose on the real estate or proceed against other collateral before seeking payment from defendant.

*Id.* at 49. The court went on to state:

> Furthermore, even if plaintiff did collect money through foreclosure, plaintiff would not be required to offset those funds against the money due from defendant unless the payment by defendant would result in recovery of more than 100 percent of the indebtedness.

*Id.* at 49.

Notably, the language in *Cohen* does not contain any word analogous to the word "top," which is found in this Guaranty. However, while *Cohen* does not contain the word "top," another Michigan case, *Sterling Bank & Trust, F.S.B. v. SC Southfield-Twelve Associates, L.L.C.*, does contain similar language. No. 322325, 2015 WL 7367997 (Mich. Ct. App. Nov. 19, 2015). The language of the guarantee in *Sterling* stated that the guarantors "unconditionally guarantee[d] … the top twenty five percent (25 %) of the outstanding indebtedness." *Id.* at *4. The guarantor defendants in that case put forth the same argument presented here, and claimed "the word 'top' means that Canvasser promised to pay the first or initial 25% portion of SC STA's liability under the promissory note" and that any subsequent foreclosure proceeds should be deducted from this amount. *Id.* at *4.

The Michigan Court of Appeals rejected this argument, and affirmed the decision of the trial court, holding that "defendants' interpretation of 'top' is not supported by the precise terms of the agreement, and plaintiff was not required to foreclose on the leasehold mortgage at a particular time or apply the proceeds from the foreclosure or other funds received" in a manner that extinguished the guarantors' liability. *Id.* at \*5.

While in *Sterling,* the guaranty did not contain the word "continuous," it did contain the word "outstanding," which the court found to be "significant in ascertaining [the Guarantors'] obligations under the guaranty and in construing the word 'top.'" *Id.* at \*4. In analyzing the contract language, the court interpreted "outstanding" as meaning "continuing to exist," and held that this meant that the guarantor promised to pay the "first or initial 25% of [the borrowers'] unpaid or uncollected debt when the debt was due, or at any time after it became due, regardless of any other payments received by plaintiff." *Id.* at \*4. Just as the word "outstanding," "continuous" can also mean "continuing to exist," and the Court is not persuaded that Defendants have successfully distinguished the instant case from *Sterling* and shown that their interpretation merits dismissal of the case.

Furthermore, Defendant's argument fails to consider another provision in the Guaranty which states: "Any amount received by Lender from whatever source and applied by it toward the payment of the Liabilities shall *be applied in such*

*order of application as Lender may from time to time elect*" (emphasis added) [1-6 at 73].[3] Reading the Guaranty as a whole, this provision supports Plaintiff's claim that it applied for foreclosure proceeds to the "bottom" of the debt, leaving the "top" untouched. *See Cohen*, 291 Mich. App. at 46 ("[A] contract is to be construed as a whole... all its parts are to be harmonized so far as reasonably possible... no part is to be taken as eliminated or stricken by some other part unless such a result is fairly inescapable") (citation omitted).

Plaintiff has presented a convincing interpretation of the Guaranty, supported both by its express language and Michigan case law construing similar language. Defendants' attempts to distinguish the cases cited by Plaintiff are not convincing, and Defendant has not shown any case that interpreted a similar Guaranty term consistently with their theory. Therefore, Plaintiff is entitled to the full relief they are entitled to and it is not required to be cut by 50%.

### 3. RECOVERY OF POST-FORECLOSURE EXPENSES AS PART OF A DEFICIENCY BALANCE

Defendants argue that Plaintiff cannot recover post-foreclosure expenses as part of a deficiency balance. In support, Defendants cite *Bank of Three Oaks v. Lakefront Properties*, 178 Mich. App. 551, 555, 444 N.W.2d 217, 219 (1989) to

---

[3] This language is also present in the *Sterling* case and contributed to the trial court's conclusion "the plain language of the guaranty … does not prescribe a particular timeframe or order for applying payments in the calculation of SC STA's outstanding debt for purposes of determining Canvasser's "top 25%" share." *Sterling*, 2015 WL 7367997, at *4 .

support the argument that mortgagors and/or guarantors cannot be held liable for costs incurred after the foreclosure sale. Plaintiff argues that *Bank of Three Oaks v. Lakefront Properties* only applies in instances like those in that case, where the property is purchased for an amount equal to the amount due on the mortgage. [30 at 10, n. 2]. However, the Michigan Courts have clarified the ruling of the case, stating a "position that the rule in Bank of Three Oaks only applies to situations where the property was purchased for an amount equal to the amount owed by the mortgage is not accurate." *Fed. Deposit Ins. Co. v. Torres*, No. 311277, 2014 WL 309787, at *13 (Mich. Ct. App. Jan. 28, 2014). Specifically, the Court stated that *Bank of Three Oaks'* determination relied on "Michigan statutes, which exclusively govern after a foreclosure sale, [that] do not allow for the imposition of post-foreclosure interest [if the mortgagor did not choose to redeem the property per MCL §600.3240]." *Id.* Given this precedent, per *Bank of Three* Oaks, items like "interest, taxes, and insurance premiums accruing between the date of the sale and the date of redemption" are not the responsibility of Defendants. *Bank of Three Oaks v. Lakefront Properties*, 178 Mich. App. 551, 555 (1989).

In the supplemental brief, Plaintiff argues in a footnote that they are entitled to pursue interest accrued post-foreclosure under MCL §438.31, which gives rise to the accrual of interest on liquidated debts. However, there is no case law presented to support the use of this statute in mortgage cases. Therefore, given the

clear precedent from Michigan Courts, and applicable Michigan statute addressing the issue, Plaintiff is not entitled to post-foreclosure expenses.

### 4. ATTORNEY FEES

Defendants first argue that Plaintiff is limited by statute to collecting attorney fees connected with the pre-foreclosure work associated with a foreclosure by advertisement to $750.00. However, Defendant does not identify the alleged statute and therefore the Court has no reason to limit the award of attorney fees based on the language of the Note that holds Defendants liable for "costs of collection, including a reasonable attorney fee through all appeals…" [30-2 at ¶7].

State law governs the award of attorney fees in diversity cases. *See e.g. Auto. Support Grp., LLC v. Hightower*, 503 Fed.Appx. 411, 421 n.5 (6th Cir. 2012). Therefore, the Court must look to Michigan law to analyze Plaintiff's request for attorney fees. Per Michigan law, parties can create a contractual provision that requires a breaching party to pay the other side's attorney fees and costs. *Papo v. Aglo Restaurants of San Jose, Inc.*, 149 Mich. App. 285, 299, 386 N.W.2d 177, 183 (1986). However, these costs must be reasonable and it is the burden of the party requesting the fees to prove that the requested fees are reasonable. . *Smith v. Khouri*, 481 Mich. 519, 530, 751 N.W.2d 472, 479 (2008).

Under Michigan law, reasonable attorney fees are calculated and awarded in three steps. The Court must first determine the "fee customarily charged in the

locality for similar legal services" to ensure that the rate requested is in line with

the rates charged for similar services by attorneys or "reasonably comparable skill,

experience and reputation." *Id* at 530-531. Next, "the Court must determine the

reasonable number of hours expended by each attorney." *Id* at 532. The party

requesting the fees must provide evidentiary support to establish the market rate

and the hours claimed. *Id.*

Next, the Court multiples the reasonable hourly rate and the reasonable

number of hours billed to create a "baseline figure." *Id* at 533. The Court considers

eight factors to determine whether the baseline should be increased or decreased.

*Id.* There factors are:

> (1) the experience, reputation, and ability of the lawyer or lawyers
> performing the services, (2) the difficulty of the case, i.e., the novelty
> and difficulty of the questions involved, and the skill requisite to
> perform the legal service properly, (3) the amount in question and the
> results obtained, (4) the expenses incurred, (5) the nature and length
> of the professional relationship with the client, (6) the likelihood, if
> apparent to the client, that acceptance of the particular employment
> will preclude other employment by the lawyer, (7) the time limitations
> imposed by the client or by the circumstances, and (8) whether the fee
> is fixed or contingent.

*Hemlock Semiconductor Corp. v. Solarworld Indus. Sachsen GmbH*, No. 13-CV-

11037, 2016 WL 6471192, at *3 (E.D. Mich. Nov. 2, 2016), citing *Pirgu v. United*

*Servs. Auto. Ass'n*, 499 Mich. 269, 282 (2016).

Plaintiff has failed to include any evidence for the Court to consider in

determining whether the attorney fees requested are reasonable under Michigan

law. Plaintiff's sole exhibit on the issue of attorney fees and costs is a list of fees for each month from July 2014 through March 2017. [30-7]. There is no explanation concerning the costs or details about the hours spent each month and tasks completed in order to justify the amount alleged. Therefore, the Court agrees with the Defendants that Plaintiff has not presented the evidence required for the Court to evaluate whether the requested fees are reasonable.

However, the Court disagrees with Defendants that the Plaintiff is therefore not entitled to any attorney fees. Given the plain language of the Note, Plaintiff is entitled to its reasonable attorney fees. [30-2 at ¶7]. If Plaintiff intends to pursue the issue of attorney fees and costs, it may file a Motion for Attorney Fees and Costs no later than May 1, 2017 that provides adequate evidence and detail as required by Michigan law so that the Court can determine whether the request is reasonable.

5. "OTHER BANK EXPENSES"

Plaintiff is entitled under the Mortgage to "make such expenditures and outlays of money as [it] may deem appropriate for the preservation of the Property. All expenditures and outlays of money made by [Plaintiff] pursuant hereto shall be secured hereby…" [30-3 at ¶7]. In the case of a default, Plaintiff had the right under the Mortgage to "take any and all steps…that Plaintiff deems necessary to enforce the payment of [Telefar's] indebtedness and performance of the

obligations secured hereby and to protect the lien of this Mortgage." [*Id* at ¶9(a)].

Additionally, Plaintiff could "[p]rocure mortgage foreclosure or title reports" and

Telefar "covent[ed] to pay forthwith to [Plaintiff] all sums paid for such purposes

with interest at the default rate provided for in the Mortgage Note, and such sums

and the interest thereon shall constitute a further lien upon the property." [*Id* at

¶9(d)].

Defendants argue that Plaintiff cannot recover the requested $15,799.14 in

other bank expenses. Specifically, they allege that the costs claimed, including

foreclosure costs, environmental inspections and appraisal costs because they were

unnecessary and for the Plaintiff's sole benefit and thus are not covered in the

loan's guaranty.

The Guaranty provides that Guarantors guaranty:

> (b) the continuous top fifty percent (50%) of the total indebtedness for
> all extensions or renewals of said note, and all expenses including
> reasonable attorney fees, incurred in the collection thereof, the
> enforcement of rights under any security therefore and the enforcement
> hereof; and (c) The continuous top fifty percent (50%) of the total
> indebtedness resulting from advances made on Borrowers behalf by
> Lender to protect or preserve the priority and security of its first lien.

[30-4]. There is no evidence presented that these were unnecessary to preserve the

priority and security of the first lien. Further, Defendants do not address the terms

of the Mortgage that explicitly state that these advances can be made by the

Plaintiff to secure the property under the first lien. Without any evidence, or

persuasive argument presented by the Defendants, the Court agrees with Plaintiff that these foreclosure costs, environmental inspections and appraisal costs are related to protecting and preserving the security of the first lien.

Additionally, for the reasons set forth in section 2 of this Order, the Court does not agree with Defendants that the terms of the Guaranty require this amount be halved, and therefore Defendants are liable for the full amount of $15,799.14.

## 6. DAMAGE CALCULATIONS

After considering both sides' supplemental briefs, the damage calculations are as follows:

### a. CALCULATION THROUGH FORECLOSURE

#### i. PRINCIPAL, INTEREST AND LATE CHARGES

Per Plaintiff's declaration [30-6 at ¶7], at the time of the foreclosure sale, the amount owed on the loan (excluding collection costs due to the insufficient showing that the attorney fees and costs were reasonable, as discussed above), the amount owed on the loan comprised of the following:

| | |
|---|---|
| Principal | $1,969,962.10 |
| Interest | $136,200.99 |
| Late Charges | $3,816.10 |
| Escrow Advances | $20,776.09 |
| Protective Advances | $63,452.17 |

Other Expenses          $15,799.14

Total                   $2,210,006.59

Foreclosure Credit      $1,400,000.00
_____
**Deficiency Balance    $810,006.56**

### b.  CALCULATION AFTER FORECLOSURE

Per the analysis above, Plaintiff is not entitled to interest after foreclosure. With respect to the collection of rents after foreclosure, Plaintiff collected $90,381.26 in rents on the property per the Assignment of Rents. Pursuant to ¶3(c) of the Assignment of Rents, Plaintiff "shall apply all rents, income and profits from the Property, less the costs and expenses of collection (including reasonable attorneys' fees) as set forth in the Mortgage or other loan documents for the application of rents and income." [30-5]. Per the Mortgage, Plaintiff can apply the rents to, *inter alia*, payment of costs and expenses incurred by Plaintiff, interest and principle due under the Mortgage, expenses incurred by Plaintiff preserving the Property, including taxes and insurance premiums. [30-3 at ¶19].

Per Plaintiff's declaration, Plaintiff paid $34,953.26 in property taxes and $70,906.36 in condominium dues between the foreclosure and the expiration of the redemption period. [30-5 at ¶17]. Because the rents collected are less than the combination of these two items, there is no credit due toward Defendants' indebtedness.

### c. ATTORNEY FEES AND COSTS

Per the examination above, the Court does not accept Plaintiff's calculations regarding their reasonable attorney fees and costs because of the lack of information required under Michigan law for the Court to determine that the fees are in fact reasonable. Therefore, Plaintiff is ordered to file a Motion for Attorney Fees no later than May 1, 2017 with Defendants to reply no later than June 1, 2017, so that the Court may determine if the request is reasonable.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment [22] is **GRANTED.**

**IT IS FURTHER ORDERED** that Judgment is entered against all Defendants, jointly and severally, for $810,006.56

**IT IS FURTHER ORDERED** that Plaintiff is ordered to file a Motion for Attorney Fees and Costs no later than May 1, 2017 for the Court to determine reasonable attorney fees and costs under Michigan law. Defendants may file a response no later than May 15, 2017.

**SO ORDERED**.


                                               s/Arthur J. Tarnow
                                               Arthur J. Tarnow

Dated: March 31, 2017                Senior United States District Judge